LESSEE OF GEORGE N. HUNT v. NATHAN GUILFORD.

Question of boundary of the out-lots of Cincinnati.

Alleged revocation of a submission to arbitration left to the jury upon evidence.

An agreement to submit a question of boundary to arbitration defeats the operation of the statute of limitations.

THIS cause was adjourned here for decision from the Supreme Court of Hamilton county. It came before the court upon a motion for a new trial made by the defendant, where the plaintiff had obtained a verdict in an action of ejectment. The case is stated in the opinion of the court.

Fox for the new trial.

PENDLETON against it.

Opinion of the court, by Judge BRUSH:

The ground in controversy, in this action of ejectment, was about fifty-nine and a half feet wide at one end of out-lot No. 12, in the city of Cincinnati, and forty-six and a half feet wide at the other end and west end of same lot on the north part of the lot; which ground, by mistake, had been inclosed within the fence, made round out-lot No. 13, adjoining No. 12 on the north. Plaintiff's title was made out as follows:

*First.* A deed from John Cleves Symmes to Jesse Hunt, for out-lot No. 12, dated February 21, 1809.

*Second.* A deed from Jesse Hunt to the lessor of the plaintiff, for the same lot (No. 12), dated August 20, 1820.

311]  *Third.* An agreement in writing, as follows, viz:

"Whereas, doubts and uncertainty exist respecting the distance which each out-lot of the town of Cincinnati ought to extend north, from the northern boundary of Seventh street or Northern Row, agreeably to the plan and records of the said town, and in order to do away all doubts and disputes that may hereafter arise respecting the same, know ye, that we, the undersigned owners of out-lots, do agree to submit, and by these presents do submit, the matter in doubt and uncertainty to the judgment and award of Martin Baum, William Lytle, O. M. Spencer, John S. Gano, and John S.

Wallace, commissioners to settle and fix a true line of each of said out-lots, who are hereby authorized to call witnesses before them, or such other testimony as they may deem necessary. And it is agreed that their award shall be final and binding on the parties hereunto subscribed. Dated April 10, 1816." Signed by twenty-eight persons (one as the guardian of heirs). Among the rest, by Jesse Hunt, the person under whom the lessor of the plaintiff claimed title, and William Woodward, under whom defendant claimed title. A report and award, in writing, as follows:

"We, the undersigned, having been chosen by D. E. Wade, Abdeel Coleman, Daniel Symmes, James Ferguson, and others, as appears by the annexed instrument or submission, owners of out-lots in the town of Cincinnati, to fix the true lines of said out-lots, having caused an accurate survey of said out-lots, by Joel Wright, town surveyor of said town, which said survey or plat is hereto annexed, and having fully examined said plat, and being convinced that it is the most correct and equitable plan of establishing the boundaries of said out-lots, do award and determine that the lines or boundaries shall be established and fixed according to said plan, making the width of said out-lots, from northwardly to southwardly, about four hundred twenty-six and a half feet, and extending eastwardly and westwardly half the distance between the present streets, and now running from toward the Ohio northwardly. We do further award and determine that the principle or standard on which the annexed plat is made, shall be to divide the distance from the north side, Northern Row, along the east **312]** side of Vine street, *to the northern boundary line of said out-lots, as lately established, into eight equal parts, and from the points made by such division to run lines eastwardly and westwardly, parallel to Northern Row, as far as the plan of said out-lots extends, which lines shall be the northern and southern boundaries of said out-lots.

" Given under our hands, at Cincinnati, this 15th day of February,

"Martin Baum,
O. M. Spencer,
John S. Wallace,
William Lytle,
John S. Gano."

Lessee of Hunt *v.* Guilford.

Upon the plan or map referred to in the above award, as an-nexed thereto, the said surveyor certifies thus: " I hereby certify that I have surveyed Cincinnati out-lots, agreeably to the con-struction of the commissioners, which is further exhibited by this map, and the distance that each lot extends northwardly is stated, on the east line of Vine street; and the area attached to their respective numbers.    Second month, 1817.    Joel Williams, T. S ; " and underwritten on same, " Recorded, March 20, 1817, in book R, page 23, Thomas Henderson, recorder of Hamilton county, Ohio."

On the trial, the plaintiff objected to the admission of the above agreement, award, and map or plan of that part of the town, as not legal and competent evidence in this action of ejectment.

The objection was overruled, and the evidence admitted as proper to show the character and nature of plaintiff's possession, whether adverse or not, and to furnish some evidence where the original line was actually run, thereby to show that the fence to which the defendant claimed was on the lot No. 12, and included part of it within the inclosure round No. 13.

*Fourth.* General William Lytle, one of the commissioners, testi-fied that the principle by which the commissioners ascertained and established the lines between the out-lots, was as stated in the award ; that they, or the surveyor, stuck stakes at the corners of the lots, and at every corner *on the streets from Seventh [313 street, or Northern Row, north to the northern boundary line of the town.    That Seventh street was agreed to be the southern boundary and base of the award.    That Vine street was that by which Ludlow laid off the town, and made the original plat or plan as recorded (which was in evidence), and that the ground for the out-lots was divided into eight equal parts.    And that persons generally were satisfied with the division made by the commis-sioners.    Cross-examined : he has no recollection that Mr. Wood-ward made any objections, or revoked the authority of the arbi-trators.

Joseph Gest testified, that in running the line between the lots Nos. 12 and 13, agreeable to the new survey, he found it on Broad-way (the east side of the ground in controversy), to be fifty-nine and a half feet north of the defendant's fence, and on Syca-more (west side of the ground in controversy), forty-six and a half feet north of the fence.    The streets now laid out and im-proved are agreeable to this new survey.    That the streets north

of Seventh street, running east and west, have all been laid out since 1816 by the proprietors. That there are more than four acres of ground in each of the out-lots so established ; that there is no street laid out east and west, east of Main street, and north of Eleventh or Canal street. That the sycamore tree is at the west end of the fence at the southwest corner of No. 13, as inclosed and claimed by plaintiff, and he has understood it has been called a corn er.

For defendant, Wm. Woodward testified. He thinks it was in 1793, when he purchased the lot No. 13. The deed is dated 1795. Captain Benham and James Dement owned No. 12 at that time. It was planted with a peach orchard. Fifteen or sixteen years ago, the present fence between the lots was built. Mr. Henderson run the line, and carried it about thirty feet north of the old line. The sycamore was then the corner of No. 13, the southwest corner. Henderson's line runs east from that tree, so far north of the fence on the east side, as to have thirty feet between it and the fence, leaving out of my lot a triangular piece of ground. I went before they (the commissioners) had dispersed, and told them I must revoke what I had done. I could *not consent to alter my fences, but must continue to hold as I had done. Some person, one of the body, said, then if I do n't sign it, it will be of no use to record it. Mr. St. Clair said, yes, by God, we will record it. I have occupied out-lot No. 15 more than twenty-five years. The south fence of No. 13 did not run the course of the lines between the lots.

R. R. Williams testified, he was in the room where the commissioners were—Mr. Woodward stepped up and put his hand upon the paper, and said he would revoke what he had done. It was soon after they had gone into the house. Mr. Hunt was in the room I think. General Lytle, Mr. St. Clair and others were present.

Mr. Henderson presumes he did not find any old traces of old lines. One corner which he found agreed with the new lines, and one did not, but varied a little. My impression at that time was, that the out-lots were intended to contain, and did actually contain, four acres, strict measure. He surveyed a good deal there for Judge Symmes and Joel Williams.

There is not a general satisfaction by the claimants in the new

survey. The north line of the town is a section line. Originally and now those out-lots extended to the section line.

Defendant then gave in evidence:

A deed from J. C. Symmes to said William Woodward for fraction north of No. 8, dated September 7, 1804.

A like deed for out-lot No. 8, same date.

A like deed for out-lot No. 13, dated October 1, 1795.

Another deed from Levi Woodward to William Woodward for out-lots Nos. 21 and 22, and fraction north of Nos. 21 and 22.

Plaintiff's rebutting evidence:

Oliver M. Spencer testified. He was one of the commissioners, and has no recollection that Woodward revoked the submission. Does not know that any one attempted to act upon the submission or award.

Colonel John S. Wallace, one of the commissioners, testified: He does not recollect that there was any objection made by Mr. Woodward to the submission or award, or that he pretended to revoke the same. That there were stakes set *down for the [315 corners of the out lots, and people occupied, and improved, and fenced accordingly. Cross-examined: David Logan inclosed the lot No. 13, and assisted my father to inclose the lot No. 14. Logan inclosed the lot No. 13 in 1791 or 1792.

Defendant's counsel then gave in evidence a deed from J. C. Symmes to John Machin, for out-lot No. 15, dated January 6, 1799. There was a verdict for plaintiff, and a motion for new trial, reserved for decision, etc.

The reasons, as stated, are: 1. Because plaintiff did not show any sufficient title to make an entry, on the premises described in his declaration.

2. Because said verdict is contrary to evidence.

3. Because the statute of limitations was a bar to the plaintiff's recovery.

4. Because the court mistook the law in charging the jury.

To the first objection, or reason assigned, it may be sufficient to say that the plaintiff proved a perfect legal title in his lessor, which has usually been considered a sufficient right of entry to maintain an action of ejectment, *prima facie.* Again, the award if found by the jury, to have been made, before revocation of the authority of the commissioners, or arbitrators, establishes a right of entry sufficient to entitle him in whose favor made to recover

in ejectment. Sellick *v.* Adams, 15 Johns. 199; Doe, Morris, and others *v.* Rossu, 3 East, 15; 2 Caine, 199, 320.

If by the second reason assigned (that the verdict is contrary to evidence), is intended that there was not evidence that defendant was in possession of the premises at the time the declaration was served upon him, the answer that he relied so much upon the fact, that he was so in possession, and that he, and those under whom he claimed title, had been so in possession, from the year 1793, might reasonably be considered sufficient, without any formal proof of that possession. The chief ground of his defense being, the bar which the statute of limitations interposed in such cases, would have no foundation in fact, unless such possession was proved or admitted. In this case, it was not disputed, and was considered by the court, as yielded on all sides, at least by **316]** the *plaintiff; and was most strenuously maintained by defendant's counsel. The matters litigated at the trial, and which only are entitled to consideration, were, first, the true boundary between the two lots Nos. 12 and 13. If that was found to be any considerable distance north of plaintiff's fence and possession: then, secondly, was that possession adverse to plaintiff's title, or subordinate; thirdly, did it continue adverse twenty years, from the taking effect of the statute of limitations, June 1, 1804, before the commencement of this action, November 8, 1824. Or did its adverse character cease, by the acts of the parties, in entering into the submission and agreement aforesaid, and the making the award above set forth? Both, or either?

The question whether the submission, and the authority by it vested in the commissioners to make the award, was revoked by Mr. Woodward before the award was completed, or not, was left to the jury, being matter of fact, proper for their determination. They were advised that it was incumbent on the defendant to satisfy them that the power had been so revoked, before the award was completed, else the award would be valid against Woodward, and all claiming under him—that the law not only allowed parties, to settle amicably their controversies, and in this way, but favored such settlements, and when they so appeared, slight proofs should not destroy them. It ought to be strong and convincing. The jury, upon the evidence stated above, have found this matter in favor of the plaintiff, and the court are satisfied with their verdict. I should be very unwilling to believe

Lessee of Hunt *v.* Guilford.

those commissioners had allowed that document to be recorded, without noting on it the fact that Woodward had revoked the submission, if he had actually done so, before it was completed. Three of them now testify, they have no recollection of it, if he did. His own testimony leaves the impression that he did not announce his intention to revoke, until too late, after the commissioners had finished, and no longer could control their doings in that respect; when nothing remained to be done but to record the instrument. ·The testimony of Williams makes the same impression: he says Mr. Woodward stepped up and put his *hand* on the *paper*, and said he should revoke, etc. Neither of these *wit- [317 nesses, or any other, state any act done by the commissioners, or either of them, as signing the award, after Mr. Woodward spoke of revoking their authority. The award being thus properly established by the jury, its effect is decisive, in this action, and upon this motion for a new trial, which accordingly should be overruled. Were it necessary, in this case, I should feel at liberty to say that the agreement ought, and would have the effect in law, to preclude Woodward, and all claiming under him, knowing it, from insisting on the bar of the statute, or that his possession was adverse. In 9 Johns. 104, it is said: "This possession has continued nearly forty years, and would be conclusive, unless the *agreement* said to have been made in 1790, should be sufficient to take the case out of the statute of limitations." In Doe *v.* Rossu, above quoted, 3 East, 15, the court say: "The award can not have the operation of conveying the land. But there is no reason why the *defendant* may not conclude himself by his own *agreement*, from disputing the title of the lessor in ejectment." 5 Dane's Abr. 137, ch. 141, art. 7, sec. 9. "The defendant is concluded by his own *agreement* from disputing the title of the lessor in ejectment." 2. Caine, 320. If, then, the award did not bind the defendant, the agreement did, and then it would be a question of fact for the jury, where was the true line between the two lots? It was so left to them, and they have found, and correctly, upon the evidence, that by that line the plaintiff is entitled to a piece of the ground, as part of No. 12, which is included within defendant's fence, as part of No. 13. Upon no principle is the verdict. contrary to evidence; nor do I think the defendant can rely on the statute as a bar. As to the charge, I concur with my brethren. that it was nothing erroneous or against law.